**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, *Plaintiff-Appellee*, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General; AMY L. SOLOMON, Principal Deputy Assistant Attorney General; UNITED STATES DEPARTMENT OF JUSTICE, *Defendants-Appellants.* | No. 19-15947 <br><br> D.C. No. 3:18-cv-05146-WHO |
| STATE OF CALIFORNIA, ex rel, XAVIER BECERRA, in his official capacity as Attorney General of the State of California, *Plaintiff-Appellee*, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General; AMY L. SOLOMON, in her official capacity as Principal Deputy Assistant Attorney General; UNITED STATES DEPARTMENT OF JUSTICE, *Defendants-Appellants.* | No. 19-15950 <br><br> D.C. No. 3:18-cv-05169-WHO |

2    CITY & CTY. OF SAN FRANCISCO V. GARLAND

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

| | |
|---|---|
| STATE OF OREGON; KATE BROWN, Governor; ELLEN ROSENBLUM, Attorney General; CITY OF PORTLAND, | No. 19-35843 |
| *Plaintiffs-Appellees*, | D.C. No. 6:18-cv-01959-MC |
| v. | |
| JOSEPH R. BIDEN, President of the United States, in his official capacity; MERRICK B. GARLAND, Attorney General, Attorney General of the United States, in his official capacity; UNITED STATES OF AMERICA, | OPINION |
| *Defendants-Appellants.* | |

Appeal from the United States District Court
for the District of Oregon
Michael J. McShane, District Judge, Presiding

Argued and Submitted June 16, 2022
San Francisco, California

Filed July 29, 2022

Before:  Sidney R. Thomas, Ronald M. Gould, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge S.R. Thomas;
Partial Concurrence and Partial Dissent by Judge Bea

---

**SUMMARY**[*]

---

**Civil Rights**

In consolidated appeals, the panel affirmed in part and vacated in part district court judgments in actions challenging immigration enforcement-related conditions imposed by the Department of Justice on grants made pursuant to the Edward Byrne Memorial Justice Assistance Grant Program for Fiscal Years 2017 and 2018.

The Byrne Memorial Justice Assistance Grant ("JAG") program is a federal formula grant that supports state and local criminal justice efforts.  Effective Fiscal Years 2017 and 2018, the Department of Justice ("DOJ") imposed new immigration enforcement-related conditions ("Conditions") on Byrne JAG funds.  In order to draw upon their Byrne JAG funds, grant recipients, among other things, had to certify that their laws complied with independent provisions of the Federal Code, specifically 8 U.S.C. § 1373, a provision of the Illegal Immigration Reform and Immigrant Responsibility Act enacted in 1996, and 8 U.S.C. § 1644, of the Personal Responsibility and Work Opportunity Reconciliation Act.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The district court for the Northern District of California and the district court for the District of Oregon determined that the Conditions exceeded the DOJ's statutory authority and permanently enjoined their enforcement. The district courts also held that Sections 1373 and 1644 violated the Tenth Amendment, and permanently enjoined their enforcement.

The United States did not appeal the injunctions to the extent that they were based on the holding that the Conditions exceeded DOJ's statutory power, as conferred by Congress. The panel, consistent with this Circuit's prior precedent and the government decision not to appeal the district courts' judgments on this issue, affirmed the judgments of the district courts enjoining DOJ from withholding Byrne JAG program grant funds based on the Conditions.

Addressing next the facial constitutional challenges under the Tenth Amendment to Sections 1373 and 1644, the panel held that these challenges were not justiciable in their present posture. This Circuit's precedential interpretation of Section 1373 dispelled any purported conflict between the federal provisions and plaintiffs' laws and resolved the controversy that once animated plaintiffs' facial challenge. *See United States v. California,* 921 F.3d 865 (9th Cir. 2019), *cert denied*, 590 141 S. Ct. 124 (2020). Because plaintiffs' laws complied with the federal provisions, their facial challenges were no longer ripe. Having concluded that plaintiffs' facial challenges were either not ripe, or were mooted, the panel narrowly vacated the district courts' determinations that Sections 1373 and1644 were facially unconstitutional without deciding the merits of those claims. The panel remanded with directions to dismiss the facial challenges to 8 U.S.C. §§ 1373 and 1644.

Concurring in part, Judge Bea agreed fully with the majority's decision to hold non-justiciable the question of whether §§ 1373 and 1644 are facially unconstitutional under the Tenth Amendment. Judge Bea respectfully dissented from Part II of the opinion, in which the majority affirmed the district courts' rulings that the DOJ lacked the statutory authority to impose the challenged grant conditions. Judge Bea saw no reason to affirm those rulings because the DOJ waived any appeal of them.

## COUNSEL

Daniel Tenny (argued), Mark B. Stern, and Laura E. Myron, Appellate Staff; Brian M. Boynton, Principal Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellants.

Sara J. Eisenberg (argued), Jesse C. Smith, Yvonne R. Mere, and Tara M. Steeley, Deputy City Attorneys; David Chiu, City Attorney; Office of the City Attorney, San Francisco, California; for Plaintiff-Appellee City and County of San Francisco.

Samuel P. Siegel (argued), Deputy Solicitor General; Michael J. Mongan, Solicitor General; Lisa C. Ehrlich, Deputy Attorney General; James F. Zahradka II, Supervising Deputy Attorney General; Michael L. Newman, Senior Assistant Attorney General; Rob Bonta, Attorney General; Attorney General's Office, California Department of Justice, San Francisco, California; for Plaintiff-Appellee State of California.

Ellen F. Rosenblum, Attorney General; Benjamin Gutman, Solicitor General; Peenesh Shah, Assistant Attorney General; Office of the Attorney General, Salem, Oregon;  Denis M. Vannier, Senior Deputy City Attorney; Office of the City Attorney, Portland, Oregon; for Plaintiffs-Appellees State of Oregon, Kate Brown, Ellen Rosenblum, and City of Portland.

## OPINION

S.R. THOMAS, Circuit Judge:

In this appeal, we again consider immigration enforcement-related conditions ("Conditions") imposed by Department of Justice ("DOJ") on grants made pursuant to the Edward Byrne Memorial Justice Assistance Grant Program ("Byrne JAG program") for Fiscal Years 2017 and 2018.  Consistent with our prior precedent and the government decision not to appeal the district courts' judgments on this issue, we affirm the judgments of the district courts enjoining DOJ from withholding Byrne JAG program grant funds based on the Conditions.

The district courts also held that 8 U.S.C. §§ 1373 and 1644 violated the Tenth Amendment.  We conclude that these facial challenges are either not ripe, or are mooted by our Court's construction of the statutes and enjoinment of the Conditions.  We therefore vacate the judgments of the district court insofar as they hold that 8 U.S.C. §§ 1373 and 1644 are unconstitutional, without deciding the merits of those claims.

We remand with directions to dismiss the facial challenges to 8 U.S.C. §§ 1373 and 1644.[1]

## I

## A

The Byrne JAG program is a federal formula grant that supports state and local criminal justice efforts. *See* 34 U.S.C. § 10152. Since the mid-2000s, DOJ's Office of Justice Programs has administered the Byrne JAG program, according to a statutory formula that considers grant recipients' populations and violent crime rates. *See* 34 U.S.C. § 10156(a)(1). To receive funds, grant recipients must demonstrate that they will use the money to further one of eight law enforcement programs enumerated in the Byrne JAG statute. *See* 34 U.S.C. § 10152(a)(1)(A)–(H). Congress has repeatedly rejected legislative proposals to link the Byrne JAG program to immigration policy or enforcement. *See, e.g.*, Securing America's Future Act of 2018, H.R. 4760, 115th Cong. (2018); Ending Sanctuary Cities Act of 2016, H.R. 6252, 114th Cong. (2016) (predicating federal grant eligibility, generally, on compliance with Section 1373); Sanctuary City All Funding Elimination Act of 2015, H.R. 3073, 114th Cong. (2015) (same); *see also City and County of San Francisco v. Trump*, 897 F.3d 1225, 1234 & n. 4 (9th Cir. 2018) (noting the same).

Effective Fiscal Years 2017 and 2018, DOJ imposed the new Conditions on Byrne JAG funds. In order to draw upon their Byrne JAG funds, grant recipients had to let Department of Homeland Security officials question suspected

---

[1] We **GRANT** San Francisco's Request for Judicial Notice.

noncitizens in their custody, as well as provide advance notice of those persons' release.    Another condition prohibited grant recipients from disclosing federal law enforcement information for certain purposes.    A final condition, which the Northern District of California termed the "Certification Condition," required recipients to certify that their laws complied with independent provisions of the Federal Code.    In its ultimate, 2018 form, the Certification Condition mandated attestations of compliance with 8 U.S.C. § 1373, a provision of the Illegal Immigration Reform and Immigrant Responsibility Act enacted in 1996, *see* Pub. L. 104-208, § 642, 110 Stat. 3009, 3009-707, and 8 U.S.C. § 1644, a provision of the Personal Responsibility and Work Opportunity Reconciliation Act, also enacted in 1996, *see* Pub. L. 104-193, § 434, 110 Stat. 2260, 2275 (discussing Act's purposes).

Section 1373 states in relevant part:

> (a) In general.  Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

8 U.S.C. § 1373.

Almost identically, Section 1644 states "no state or local government entity may be prohibited, or in any way

restricted, from sending to or receiving from the Immigration and Naturalization Service information regarding the immigration status, lawful or unlawful, of an alien in the United States." 8 U.S.C. § 1644. Because the parties agree that Sections 1373 and 1644 are interchangeable for the purposes of this litigation, we focus the remainder of our discussion on Section 1373, with the understanding that our analysis applies to both Sections 1373 and 1644.

Having conditioned Byrne JAG funds on compliance with Section 1373, DOJ interpreted the provision's language broadly. According to Plaintiffs, DOJ stated that Section 1373 encompassed any "information" that could assist federal immigration authorities in detaining or removing noncitizens. Based on its expansive interpretation, DOJ determined or suggested in late 2017 that specific laws of Plaintiffs conflicted with the federal provision. Then, because Plaintiffs could not certify compliance with DOJ's interpretation of Section 1373, DOJ withheld their Byrne JAG funds, even as it distributed funds to hundreds of other jurisdictions.

## B

In 2018, Plaintiffs sued the Attorney General, Assistant Attorney General of the Office of Justice Programs, then-President Donald Trump, and DOJ; California and San Francisco (collectively, "San Francisco"), sued for a second time. *See City and County of San Francisco v. Barr ("Barr II")*, 965 F.3d 753, 757 (9th Cir. 2020), *cert. dismissed sub nom. Wilkinson v. City and County of San Francisco*, 141 S. Ct. 1292 (2021) (challenging only the Fiscal Year 2017 conditions). As relevant here, Plaintiffs alleged that the Conditions exceeded DOJ's statutory authority and, therefore,

violated the constitutional separation of powers principle. Plaintiffs also alluded to or alleged facial challenges to Section 1373's constitutionality under the Tenth Amendment. The State of Oregon and the City of Portland, Oregon (collectively, "Oregon Plaintiffs") and the City of San Francisco requested declaratory judgments that Section 1373 is facially unconstitutional, but California did not.

In separate opinions at summary judgment, the District Court for the Northern District of California and the District Court for the District of Oregon determined that the Conditions exceeded DOJ's statutory authority and permanently enjoined their enforcement. The district courts also held that Section 1373 is facially unconstitutional under the Tenth Amendment,[2] and permanently enjoined its enforcement. But while the District of Oregon enjoined enforcement of Section 1373 only "in relation to the Byrne JAG program," the Northern District of California enjoined any enforcement of Section 1373 against California or its subdivisions, including beyond the Byrne JAG program's context. These cases were consolidated on appeal.

Since the district court decisions, DOJ has disbursed Plaintiffs' withheld funds and announced that it will not enforce the Conditions, as long as its authority to do so

---

[2] Consistent with our approach here, the Northern District of California recognized that both Sections 1373 and 1644 were at issue and contained identical language in its decision, *see City and County of San Francisco v. Sessions*, 372 F. Supp. 928, 938 (N.D. Cal. 2019), while framing its final judgment in terms of Section 1373.

remains the subject of pending litigation.[3]   However, the United States did not appeal the portion of the district courts' judgments enjoining enforcement of the Conditions, and affirmed at oral argument that it considered the injunctions binding.

## C

To the extent that we have jurisdiction, it arises under 28 U.S.C. § 1291.  We have an independent obligation to consider ripeness and mootness *sua sponte*, *see Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1116 (9th Cir. 2015) (ripeness); *Burrell v. Burrell (In re Burrell)*, 415 F.3d 994, 997 (9th Cir. 2005) (mootness), and we review questions of Article III justiciability de novo, *see Fikre v. FBI*, 904 F.3d 1033, 1037 (9th Cir. 2018).  We review the legal conclusions supporting declaratory judgments and permanent injunctions granted at summary judgment de novo.  *See Barr II*, 965 F.3d at 760 (declaratory judgments); *Viet. Veterans of Am. v. CIA*, 811 F.3d 1068, 1075 (9th Cir. 2016) (permanent injunctions).

## II

The district courts held that the Conditions exceeded DOJ's statutory authority.  *See City of Los Angeles v. Barr ("Barr I")*, 941 F.3d 931, 938–44 (9th Cir. 2019)

---

[3] We take judicial notice of the Office of Justice Program's "Legal Notice" regarding its non-enforcement of the Challenged Conditions.  The Legal Notice is a public document available on the Office of Justice Program's website.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010) (citing Federal Rule of Evidence 201 and taking judicial notice of information on official websites).  The Legal Notice was last updated April 22, 2021 and can be accessed here: https://www.ojp.gov/funding/explore/legal-notices#notice-10.

(determining that DOJ has only limited statutory authority to impose special conditions necessary for carrying out the Byrne JAG program); *see also Trump*, 897 F.3d at 1233–35 (holding that the Executive Branch may not withhold properly appropriated funds without congressional authorization to do so).[4] The United States did not appeal the injunctions to the extent that they were based on the holding that the Conditions exceeded DOJ's statutory power, as conferred by Congress. We therefore affirm the judgments and injunctions of the district courts enjoining the United States from imposing the Conditions.

III

The issues that remain on appeal are the district courts' facial constitutional challenges to Sections 1373 and 1644. We conclude that these claims in their present posture are not justiciable, and we vacate the district courts' judgments to the extent they hold that these statutes are unconstitutional, without prejudice to renewal of those claims once they become justiciable.

A

Our intervening precedent in *United States v. California* has resolved the controversy that once animated Plaintiffs'

---

[4] The district court injunctions on this basis were consistent with controlling authority from this Circuit. *See Barr II*, 965 F.3d at 761. They were also consistent with the decisions of our sister Circuits. *See City of Chicago v. Barr*, 961 F.3d 882, 892–909 (7th Cir. 2020); *City of Providence v. Barr*, 954 F.3d 23, 31–45 (1st Cir. 2020); *City of Philadelphia v. Att'y Gen. of U.S.*, 916 F.3d 276, 284–91 (3d Cir. 2019); *see also Colorado v. U.S. Dep't of Just.*, 455 F. Supp. 3d 1034, 1047–54 (D. Colo. 2020), *appeal dismissed* 2021 WL 3026820 (10th Cir. 2020).

facial challenges to Section 1373.[5] *See* 921 F.3d 865 (9th Cir. 2019), *cert. denied*, 590 141 S. Ct. 124 (2020). Plaintiffs allege actual and concrete injuries to their sovereignty from DOJ's interpretation of Section 1373. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Their theory is that DOJ indicated Plaintiffs' laws conflicted with Section 1373 and then, based on that purported statutory conflict, pressured Plaintiffs to change their laws to align with DOJ's interpretation of the federal provision—or else forego Byrne JAG funding. Plaintiffs allege that, in so doing, DOJ attempted to commandeer Plaintiffs' legislatures.

We have rejected DOJ's interpretation of Section 1373 repeatedly since Plaintiffs filed their amended complaints. *See California*, 921 F.3d at 891 ("[T]he United States argues that Section 1373 actually applies to more information than just immigration status . . . . We disagree."); *see also Barr II*, 965 F.3d at 764 ("[T]he only information to which § 1373 extends" is "a person's citizenship or immigration status."); *Steinle v. City and County of San Francisco*, 919 F.3d 1154, 1163–64 (9th Cir. 2019) (rejecting private plaintiffs' argument that Sections 1373 and 1644 include "release-date

---

[5] Because *California* resolved any ambiguity regarding Section 1373's scope, this case is distinguishable from our recent decision in *Arizona v. Yellen*, 34 F.4th 841 (9th Cir. 2022) (determining that facial challenges to an ambiguous federal provision under the Spending Clause and the Tenth Amendment were justiciable); Complaint for Declaratory and Injunctive Relief at ¶ 50, *Arizona v. Yellen*, 550 F. Supp. 3d 791 (D. Ariz. 2021), 2021 WL 1151079 (stating "[t]his dispute [is] over the extent of the limitations in the [Provision]" and that "[j]udicial resolution is required . . . for Arizona to make informed decisions on tax policy").

information").**⁶** As we stated in *California*, Section 1373 only covers immigration-status information—*i.e.*, "what one's immigration status is." *See California*, 921 F.3d at 891.

Our precedential interpretation of Section 1373 dispelled any purported conflict between the federal provision and Plaintiffs' laws. We have already applied *California* to the laws California and San Francisco identified in their amended complaints, and we determined that those laws comply with Section 1373. *See Barr II*, 965 F.3d at 761–64 (holding that California's TRUST, TRUTH, and Values Acts, as well as San Francisco's Administrative Code Chapters 12H and 12I, do not conflict with Section 1373); *see also California*, 921 F.3d at 893 (stating the Values Act did not conflict with Section 1373).

Although we have not considered Oregon Plaintiffs' laws before, our *California* decision equally erased any alleged conflict with Section 1373. DOJ stated that Oregon Revised Statutes (ORS) 181A.820 and 180.805 conflicted with Section 1373. Oregon, in turn, identified these supposed conflicts as the basis of DOJ's commandeering attempts and

---

**⁶** We reject California's argument that the district court decision leading to *Barr II* has preclusive power regarding Section 1373's constitutionality. Issue preclusion does not apply to issues we declined to reach on appeal, *see City of Colton v. Am. Promotional Events, Inc.-W*, 614 F.3d 998, 1004 n.4 (9th Cir. 2010); 18 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & P. § 4421 (3d ed. 1998 rev. 2022) ("[O]nce an appellate court has affirmed on one ground and passed over another, preclusion does not attach to the ground omitted from its decision."), and we refused in *Barr II* to consider the district court's declaration that Section 1373 is unconstitutional, *see* 965 F.3d at 761 ("Because we affirm on this basis, it is unnecessary for us to consider the district court's alternative grounds . . . including constitutional grounds . . . .").

their resulting sovereignty injuries.  But far from limiting information sharing, ORS 181A.820 explicitly *permits* state law enforcement agencies to "exchange information with a federal immigration authority," *see* ORS 181A.820(4), and has been interpreted by the Oregon Supreme Court accordingly, *see Caruthers v. Kroger*, 222 P.3d 706, 707–08 (Or. 2009) ("Other provisions of ORS [181A.820][7] permit state and local law enforcement agencies, notwithstanding ORS [181A.820(2)], to exchange information with federal authorities regarding the immigration status of arrested persons . . . .").  ORS 180.805[8] also does not conflict with Section 1373.  Although ORS 180.805(4) prohibits disclosing immigration-status information, that provision is subject to a savings clause requiring compliance with federal law.  *See Barr II*, 965 F.3d at 763–64 (rejecting DOJ's argument that Section 1373 and San Francisco's laws conflicted because San Francisco's "prohibitions are subject to a savings clause, which requires compliance with federal law").  Portland Police Bureau Policy 810.10—the alleged source of the City of Portland's sovereignty injuries—includes a similar savings clause.  Oregon Plaintiffs' laws do not restrict sharing "what [a person's] immigration status is" and, therefore, comply with Section 1373.  *See California*, 921 F.3d at 891.

---

[7] ORS 181A.820 was formerly at ORS 181.850, before it was renumbered in 2015.  *See Cruz v. Multnomah County*, 381 P.3d 856, 857 n.1 (Or. Ct. App. 2016).

[8] Oregon has amended ORS 180.805 since the Oregon Plaintiffs filed their amended complaint.  *See* 2021 Or. Laws., ch. 550, § 8, (H.B. 3265), eff. July 19, 2021.  We consider the Oregon statute's current version to evaluate if a live controversy exists.  *See Hall v. Beals*, 396 U.S. 45, 48 (1969) (per curiam) ("We review the judgment below in light of the Colorado statute as it now stands, not as it once did."); *Rocky Mtn. Farmers Union v. Corey*, 913 F.3d 940, 949 (9th Cir. 2019).

B

Because their laws comply with the federal provisions, Plaintiffs' facial challenges to Section 1373 are no longer ripe.  We may only "pass upon the constitutionality of acts of Congress . . . when the interests of litigants require the use of this judicial authority for their protection against *actual* interference." *United Pub. Workers of Am. v. Mitchell*, 330 U.S. 75, 89–90 (1947) (emphasis added).

"[R]ipeness is peculiarly a question of timing," and we evaluate "the situation now rather than the situation at the time of the [decision under review.]" *Anderson v. Green*, 513 U.S. 557, 559 (1995) (per curiam) (internal quotation marks omitted); *see* 13B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & P. § 3532.1 & n.26 (3d ed. 1998 rev. 2022) ("Many [cases] find that although a dispute was once ripe, ripeness has been lost to overtaking events . . . ."). Ripeness has both constitutional and prudential components. *See Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc).  "A dispute is ripe in the constitutional sense if it presents concrete legal issues, . . . in actual cases, not abstractions." *Mont. Env't Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014) (internal quotation marks and alteration omitted).  "In the context of a declaratory judgment suit, the inquiry depends upon whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (internal quotation marks omitted).  Similarly, "[a] request for injunctive relief remains live only so long as there is some present harm left to enjoin." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017).

Absent a conflict between their laws and Section 1373, Plaintiffs have not alleged facts identifying actual or concrete sovereign injuries. Post-*California*, their remaining allegations reduce to the theory that Section 1373's existence interferes with their sovereignty. But the mere "existence of [a] law" absent any threat of interference is not sufficient for ripeness. *Mitchell*, 330 U.S. at 90–91. Nor does the possibility of some future unconstitutional application of Section 1373 entitle Plaintiffs to dispositive judgments on the provision's constitutionality. Plaintiffs' facial challenges are no longer ripe because "any future injury [i]s purely conjectural" at "the time the [] case reached this Court[.]" *Clinton v. City of New York*, 524 U.S. 417, 431 n.16 (1998). *California* resolved the injuries to Plaintiffs' sovereignty; "[t]he parties have no live dispute now, and whether one will arise in the future is conjectural." *Anderson*, 513 U.S. at 559.

Having determined that Plaintiffs' facial challenges lack constitutional ripeness, we need not reach the prudential ripeness inquiry. *See Educ. Credit Mgmt. Corp. v. Coleman (In re Coleman)*, 560 F.3d 1000, 1005 (9th Cir. 2009) ("The constitutional component of ripeness is a jurisdictional prerequisite." (internal quotation marks omitted)); *Mont. Env't Info.*, 766 F.3d at 1188 n.3 (declining to reach prudential ripeness where constitutional ripeness was absent).

## C

In light of our intervening decision in *California*, Plaintiffs' facial challenges to Section 1373 are moot, and we lack jurisdiction to decide them. *See MetroPCS Cal., LLC v. Picker*, 970 F.3d 1106, 1115–16 (9th Cir. 2020).

Even if the Certification Condition, under DOJ's interpretation of Section 1373, once interfered with Plaintiffs' sovereignty, our *California* decision dissolved that injury. Absent a statutory conflict, Plaintiffs' allegations reduce to the theory that Section 1373's mere existence injures their sovereignty. "[W]hat makes [a declaratory judgment] a proper judicial resolution of a 'case or controversy' rather than an advisory opinion [is] the settling of some dispute which affects the behavior of the defendant towards the plaintiff." *Bayer*, 861 F.3d at 868 (internal quotation marks and italics omitted). Similarly, requests for injunctive relief are only live where "there is some present harm left to enjoin" and "[a] plaintiff who can[] reasonably be expected to benefit from prospective relief ordered against the defendant." *Id.* at 864. Because we have already rejected DOJ's injurious interpretation and clarified why Plaintiffs' laws comply with Section 1373, *see California*, 921 F.3d at 891, invalidating Section 1373 would have no further effect on DOJ's behavior toward Plaintiffs. We "can no longer grant any effectual relief." *Edmo v. Corizon*, 935 F.3d 757, 782 (9th Cir. 2019) (internal quotation marks and alterations omitted); *see also Bayer*, 861 F.3d at 865 (determining that Bayer's request for injunctive relief was moot where he had not shown "he [wa]s reasonably likely to be subjected" to his former employer's conduct or that he had "a reasonably certain need for prospective relief").

Plaintiffs' speculation that Section 1373 might, someday, limit their legislatures also does not save their facial challenges from mootness. "[S]peculative contingencies afford no basis for [a court] passing" on now-moot questions. *See Hall*, 396 U.S. at 49–50. Plaintiffs' hypothetical injury—that their legislatures may pass new laws that conflict

with Section 1373, even as interpreted in *California*—is still too speculative for us to adjudicate or redress. *Id.*

Exceptions to mootness do not save Plaintiffs' facial challenges. The voluntary cessation exception does not apply because our intervening decision in *California*—not DOJ's non-enforcement of the Conditions—mooted Plaintiffs' facial challenges. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (discussing the exception). Intervening judicial decisions may moot a case if they effectively end the live controversy and grant the parties the relief sought. *NASD Disp. Resol., Inc. v. Jud. Council of State of Cal.*, 488 F.3d 1065, 1068, 1070 (9th Cir. 2007); *see also* Wright & Miller, Fed. Prac. & P. § 3533.10 (3d ed. 1998 rev. 2022). Here, our *California* decision resolved the statutory conflict necessary to DOJ's alleged intrusions on Plaintiffs' sovereignty, and the Government has not resisted our interpretation of Section 1373 since the Supreme Court's denial of certiorari in *California*. *See* 921 F.3d 865, *cert. denied* 141 S. Ct. 124 (2020); *cf. Bell v. Wolfish*, 441 U.S. 520, 542 n.25 (1979) (determining that compliance with a court order did not moot a case where petitioners still disputed the order's legality). The "capable of repetition, yet evading review" exception also does not apply because Plaintiffs allege that Section 1373 poses an ongoing, reviewable harm, however speculative. *See United States v. Juvenile Male*, 564 U.S. 932, 938 (2011) ( per curiam) (discussing the exception).

## IV

Having concluded that Plaintiffs' facial challenges to Section 1373 are either not ripe, or are mooted, we vacate the district courts' declaratory judgments that Section 1373 is

facially unconstitutional. We also vacate the Northern District of California's permanent injunction, but only to the extent that it enjoined Section 1373's enforcement beyond the Byrne JAG context.

Where "a civil case from a court in the federal system . . . has become moot" during the course of an appeal and "pending [a] decision on the merits[,]" the "established practice . . . is to reverse or vacate the judgment below and remand with a direction to dismiss." *See United States v. Munsingwear*, 340 U.S. 36, 39 (1950). Vacatur is appropriate "to clear the path for future relitigation of the issues between the parties and to eliminate a judgment" for which appellate review "was prevented through happenstance." *See Anderson*, 513 U.S. at 560 (internal alterations omitted) (applying *Munsingwear* to vacate a judgment after plaintiff's claim became unripe during the course of an appeal); *NASD Disp. Resol.*, 488 F.3d at 1068 ("[V]acatur is generally 'automatic' in the Ninth Circuit when a case becomes moot on appeal."). "Because this practice is rooted in equity, the decision whether to vacate turns on 'the conditions and circumstances of the particular case,'" *Azar v. Garza*, 138 S. Ct. 1790, 1792 (2018), and partial vacatur of a lower opinion can be appropriate, *see, e.g.*, *Camreta v. Greene*, 563 U.S. 692, 698 (2011) (vacating only "the part of the Ninth Circuit opinion that decided the Fourth Amendment issue" under *Munsingwear*).

While vacatur is not appropriate if mootness stems from settlement or the losing party's decision to forego appeal, *see Anderson*, 513 U.S. at 560, here mootness stems from "circumstances not attributable to the parties," *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997); *see NASD Disp. Resol.*, 488 F.3d at 1070 ("We therefore hold

that the exception [to *Munsingwear*] identified in *Bonner Mall* for settlements should not apply to judgments mooted by court decisions in other cases.").

V

We affirm the district courts' declaratory judgments that DOJ lacked statutory authority to impose the Conditions. Accordingly, we also affirm the permanent injunctions, but only to the extent that they bar DOJ from withholding, terminating, or seeking return of Byrne JAG funds based on the Conditions.

In recognition of the longstanding principle that courts should avoid "pass[ing] on questions of constitutionality . . . unless such adjudication is unavoidable," we narrowly vacate the district courts' determinations that Sections 1373 and 1644 are facially unconstitutional and the District Court for the Northern District of California's permanent injunction, to the extent that it enjoined the provision's enforcement based on the holding that Sections 1373 and 1644 were facially unconstitutional. *See Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944); *see also Ashwander v. TVA*, 297 U.S. 288, 346–47 (1936) (Brandeis, J., concurring) (stating the Court should neither "anticipate a question of constitutional law in advance of the necessity of deciding it" nor "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied"). We remand with instructions to dismiss those claims. *Munsingwear*, 340 U.S. at 39.

Another case may require fulsome analysis of Sections 1373 and 1644's constitutionality. But given intervening developments, doing so here would "run contrary to the

fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) (internal quotation marks omitted). Each party shall bear its own costs on appeal.

**AFFIRMED IN PART; VACATED IN PART; REMANDED IN PART.**

BEA, Circuit Judge, concurring in part:

I join in nearly all of the majority's thoughtful opinion. But in my view, we need not and should not reach the statutory questions addressed in Part II of the opinion: whether various federal laws authorize the Department of Justice ("DOJ") to impose immigration-related conditions on certain federal grants.

This case concerns the fiscal year 2018 Edward Byrne Memorial Justice Assistance Grant Program. In the two district court rulings here on appeal, Plaintiffs the City and County of San Francisco and the State of California (in one ruling) and Plaintiffs the State of Oregon and the City of Portland (in another ruling) won judgments enjoining the DOJ from imposing various immigration-related conditions on the fiscal year 2018 Byrne grant funds. The two district courts ruled that the conditions both were outside the DOJ's statutory authority and violated the federal Constitution, and found also that two federal statutes incorporated by the grant

conditions, 28 U.S.C. § 1373 and 28 U.S.C. § 1644, facially violate the Tenth Amendment. And Defendant the DOJ appeals only that last issue: whether "§§ 1373 and 1644 are facially unconstitutional."

In Part II of the opinion, the majority affirms the district court's rulings that of the statutes that the DOJ proffered, none gave the DOJ the authority to impose the challenged grant conditions. I see no reason to affirm those rulings because the DOJ waived any appeal of them. The rules governing waiver are straightforward. "[W]aiver is the intentional relinquishment or abandonment of a known right," *Claiborne v. Blauser*, 934 F.3d 885, 893 (9th Cir. 2019), and the Ninth Circuit "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief," *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003). Here, the DOJ not only declined "specifically and distinctly" to appeal the district courts' statutory rulings; it expressly disclaimed any such appeal. Its briefing could not be clearer: "This appeal concerns only the judgment that §§ 1373 and 1644 are facially unconstitutional." So we would ordinarily not decide the separate question whether federal law authorizes the DOJ to impose the challenged grant conditions.

Of course, waiver is discretionary, and our cases set aside several situations when we may choose to overlook a party's waiver of an issue. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010). But the majority does not explain why this case falls into any of those situations, and even if it had, I still see powerful reasons for us to refrain from overlooking the DOJ's waiver here. First, neither party has asked us to affirm the district courts' statutory rulings—including the Plaintiffs, who those

statutory rulings benefited.  We should be especially hesitant to decide issues that neither party briefs,[1] and the circumstances of this case give us no reason to take that unusual step here.  Second, most of the statutory issues that the majority here decides were already resolved in litigation concerning the FY 2017 Byrne grant funds.  *See City of Los Angeles v. Barr*, 941 F.3d 931, 938–45 (9th Cir. 2019).  So with *Barr* on the books, the majority's overreach does little incremental work to, say, protect localities from federal interference or clarify important legal questions.  (*Barr* also limits the negative impact that the majority's overreach could have, but that hardly justifies the overreach in the first place.) And third, the majority accepts the district courts' conclusion—that the relevant statutes do not authorize the DOJ to impose the challenged grant conditions—without any independent analysis.  *Barr* fills this gap for most of the statutory provisions at issue, *see* 941 F.3d at 938–45, but not for 34 U.S.C. § 10153(a)(5)(D), which *Barr* did not address. So for that provision, the majority silently defers to the district courts' reasoning without stating whether it relies on that reasoning in whole, in part, or at all.  I think it unwise to outsource our legal analysis in this way, especially in the weighty context of construing the DOJ's statutory authority. For these reasons, I would adhere to our traditional approach to waiver and commitment to judicial restraint, the latter a principle on which we correctly rely in Part V of the opinion.

I thus believe the panel should address only the sole issue that the parties appealed: whether "§§ 1373 and 1644 are facially unconstitutional" under the Tenth Amendment.  I

---

[1] Jurisdictional questions aside, of course.  *See, e.g.*, *Burrell v. Burrell (In re Burrell)*, 415 F.3d 994, 997 (9th Cir. 2005) (noting that we have "an independent obligation to consider mootness *sua sponte*").

agree fully with the majority's decision to hold non-justiciable that Tenth Amendment question.     But I respectfully dissent from Part II of the opinion, in which the majority affirms the district courts' rulings that the DOJ lacks the statutory authority to impose the challenged grant conditions.